UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LUCIDRISK, LLC | : | |
|     plaintiff | : | |
| | : | |
|     v. | : | 3:08-cv-1671 (CFD) |
| | : | |
| KEITH OGDEN AND | : | |
| PETER GERHARD, | : | |
|     defendants | : | |

## RULING ON MOTION TO DISMISS

This is a diversity case alleging breach of contract (against Keith Ogden only), breach of good faith[1] and CUTPA violations (against both Ogden and Peter Gerhard) arising out of a licensing agreement (the "contract") between the plaintiff LucidRisk, LLC, a provider of financial services software, and two officers of a hedge fund or funds referred to herein as "East Avenue."  For the following reasons, the motion to dismiss is granted.

**I.     Background**

The plaintiff, LucidRisk LLC, is a Connecticut limited liability company.  Defendant Ogden is a resident of California and Chief Operating Officer of East Avenue Capital Partners Management Company LLC, a Delaware limited liability company.  Defendant Gerhard is a resident of New Jersey and a "managing member" of East Avenue Capital Partners Management Company LLC.

LucidRisk alleges that Ogden signed a contract with LucidRisk for the licensing of

---

[1] Although the complaint contains no separate count alleging the breach of good faith, paragraph 20(c) of Count Two alleges a breach of the covenant of good faith and fair dealing by Ogden and Gerhard.

software, which is used to calculate risk relating to hedge fund investments. The contract was signed in New Jersey in January, 2008, and listed "East Avenue Capital Mgmnt" as the "Client," "by Keith Ogden, COO." The contract contains a choice of law and forum selection provision which specifies that Connecticut law applies to any disputes between parties to the contract, and that such disputes "shall be adjudicated by an appropriate court located in Fairfield County, State of Connecticut."

In March 2008, Ogden (on behalf of East Avenue) repudiated the contract, stating that the hedge funds were experiencing financial difficulties and were shutting down. LucidRisk then filed suit in the Connecticut Superior Court against "East Avenue Capital Partners Management Company, LLC d/b/a East Avenue Management," a Delaware LLC. The federal action was filed in this Court in November, 2008, and the complaint alleges that Gerhard and Ogden submitted unaudited, intentionally misleading and inaccurate financial statements for East Avenue during the state court litigation, intentionally delaying the state court action, and violated a confidentiality agreement which Gerhard signed during the course of the state court litigation.

LucidRisk also alleges here that Ogden failed to adequately indicate on the contract that he was signing on behalf of a specific principal (because "East Avenue Capital Partners Management Company, LLC" is the actual name of East Avenue – not "East Avenue Capital Mgmnt," as appears on the contract), and alleges that there are several related entities with names closely resembling "East Avenue Capital Management." LucidRisk argues that because the identity of the principal is unclear, Ogden personally obligated himself under the contract and consented to jurisdiction in Connecticut.

The defendants maintain that they were not, individually, parties to the contract, and thus

this federal action should be dismissed. They argue that Ogden's signature as an officer of East Avenue was clearly an act in his representative, not individual, capacity, and that the identity of the principal, East Avenue, is clear because there is only one entity using the "East Avenue" name that manages hedge funds and has the word "Management" in the title – the other similarly-named entities are the individual hedge funds managed by East Avenue. The defendants have moved to dismiss based on lack of personal jurisdiction and failure to state a claim.

## II.     Legal Standards

### A.     Rule 12(b)(2) Motions to Dismiss

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of showing that the court has jurisdiction over the defendant. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). When the parties have conducted jurisdictional discovery but no evidentiary hearing has been held, "the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." Id. at 567 (citing Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.), cert. den., 498 U.S. 854 (1990)).

A plaintiff can make this showing through his "own affidavits and supporting materials[,]" Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981), containing "an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant." Metro. Life Ins., 84 F.3d at 567. All pleadings, affidavits, and allegations are construed "in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's

favor." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). When a motion to dismiss is based on pleadings and affidavits, dismissal is appropriate only if the submissions, when viewed in the light most favorable to the plaintiff, fail to make a prima facie showing of personal jurisdiction over the defendants. See Distefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001).

In assessing whether personal jurisdiction is authorized in a diversity case, the court must conduct a two-part inquiry. First, the court must look to the statutes of the forum state and determine whether the plaintiff has shown that Connecticut law would confer upon its courts the jurisdiction to reach the defendant, for example under the long-arm statute. If the exercise of jurisdiction is appropriate under a state statute, the court must decide whether such exercise comports with the requisites of due process. Metro. Life Ins., 84 F.3d at 567; see also Whitaker v. Amer. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002).

### B. Connecticut's Long-Arm Statute, Conn. Gen. Stat. § 52-59b(a)

This Court must first look to Connecticut's long-arm statute, Conn. Gen. Stat. § 52-59b(a), to determine whether Connecticut law confers any basis for exercising jurisdiction over these defendants. The long-arm statute provides that

> a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent . . .
>
> (1) Transacts any business within the state;
>
> (2) commits a tortious act within the state . . .
>
> (3) commits a tortious act outside the state causing injury to person or property within the state . . . if such person or agent (A) regularly does or solicits business, or

>engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

Conn. Gen. Stat. § 52-59b(a). It is the first prong of the long-arm statute, which extends jurisdiction over one who "transacts any business" within Connecticut, on which the plaintiff relies.

### 1.   "Transacts Any Business" (Section 52-59b(a)(1))

The term "transacts any business" in section (a)(1) embraces a "single purposeful business transaction" within the state. Zartolas v. Nisenfeld, 184 Conn. 471, 440 A.2d 179 (Conn. 1981). A nonresident individual who has not entered the state physically nevertheless may be subject to jurisdiction under § 52-59b(a)(1) if that individual has "invoked the benefits and protection of Connecticut's laws" by virtue of his or her "purposeful Connecticut related activity...." Id. at 475, 440 A.2d 179.

The term "transacts business" is "not broadly interpreted in Connecticut." Goudis v. Am. Currency Trading Corp., 233 F.Supp.2d 330, 334 (D. Conn. 2002). For example, the negotiation of contracts, standing alone, does not constitute "transacting business" in Connecticut. Id. Similarly, the transmission of communications between an out-of-state defendant and a plaintiff within the jurisdiction does not, by itself, constitute the transaction of business in a forum state. Bross Utils. Svc. Corp. v. Aboubshait, 489 F. Supp. 1366, 1371-72 (D.Conn. 1980); see also Greene v. Sha-Na-Na, 637 F. Supp. 591, 596 (D. Conn. 1986) (nonresident's telephone call, telegram and letter to Connecticut plaintiff did not constitute transaction of business within the meaning of § 52-59b(a)(1)).

### C. Consent to Personal Jurisdiction

In addition to arguing that the defendants transacted business in Connecticut under the Connecticut long-arm statute, the plaintiff also argues that the defendants voluntarily consented to personal jurisdiction in Connecticut by virtue of the choice of law and choice of forum provision of the contract.

"Unlike subject matter jurisdiction . . . personal jurisdiction may be created through consent or waiver." United States Trust Co. v. Bohart, 197 Conn. 34, 39, 495 A.2d 1034 (1985). Connecticut courts continue to recognize that a party to a contract may voluntarily submit to the exercise of personal jurisdiction over it in Connecticut by agreeing to a contract's forum selection provisions. See, e.g., HCR Pool III Funding Corp. v. PARCC Healthcare, Inc., No. PJRCV020461562S, 2002 WL 1455775 at *2 (Conn. Super. Ct. May 28, 2002) (denying, based on language of forum selection clause, a motion to dismiss, and stating that the defendants "cannot . . . assert that the court lacks personal jurisdiction over them, or, in the alternative, that they lack sufficient minimum contacts to satisfy due process requirements."), Call Center Solutions, Inc. v. Malson, No. CV000339425S, 2001 WL 590035 at *1 (Conn. Super. Ct. May 11, 2001) (citing United States Trust Co. v. Bohart, 197 Conn. 34, 42, 495 A.2d 1034 (1985) ("[a]bsent a showing of fraud or overreaching, such forum clauses will be enforced by the courts")). There may still be a question as to whether any given forum selection clause is permissive or mandatory, see Seward v. Devine, 888 F.2d 957, 962 (2d Cir. 1989), John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distributors Inc., 22 F.3d 51, 52-53 (2d Cir. 1994), but valid and binding forum selection clauses have generally been found to satisfy the due process concerns targeted by the minimum contacts analysis. See Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 472 n. 14 (1985).

**III.     Discussion**

    **A.     The Defendants Did Not "Transact Any Business" in Connecticut**

The plaintiff argues that the wrongful conduct of the defendants during the state court litigation should itself be a basis for the exercise of jurisdiction over them.  However, there are no decisions which hold that merely participating as a defendant in a state court civil suit and negotiating or entering into a settlement agreement as part of that litigation is "transacting business" in Connecticut under its long-arm statute.  Furthermore, any claim of misconduct by these defendants during the state court litigation should have been raised by the plaintiff and resolved as part of that litigation.  The plaintiff's failure to do so is not a reasonable or fair basis for creating personal jurisdiction over the defendants in a separate federal suit, and seems not contemplated by the long-arm statute.  Moreover, allowing courts to use a defendant's participation in litigation as a basis for personal jurisdiction in a subsequent case would likely offend due process as it could cause out-of-state defendants not to contest litigation.

    **B.     The Defendants Did Not Consent to Personal Jurisdiction Under East Avenue's Contract**

The plaintiff argues that under the contract's choice of law and forum provision, paragraph 15.10, the defendants consented to jurisdiction in Connecticut.  The provision states that

> This Agreement will be interpreted and construed in accordance with the laws of the State of Connecticut, without regard to conflict of law principles.  Any dispute or lawsuit between the parties arising out of this Agreement shall be adjudicated by an appropriate court located in Fairfield County, State of Connecticut.

Contract, ¶ 15.10.

This action was brought by LucidRisk against two of East Avenue's members, not against the company itself, which was the party to the contract. The forum selection provision, like the remainder of the contract, applies to and may bind only the parties to the contract. Thus, although the choice of forum provision clearly constitutes consent by East Avenue to personal jurisdiction in Connecticut, it has no bearing on the question of personal jurisdiction as to the individual defendants in this case. The mere fact that the company voluntarily consented to jurisdiction in Connecticut is not a sufficient basis for finding jurisdiction over its officers. Panterra Engineered Plastics, Inc. v. Transportation SYS. Solutions, LLC, 455 F.Supp.2d 104, 112-113 (D. Conn. 2006) (quoting Under Par Assocs., L.L.C. v. Wash Depot A., Inc., 47 Conn. Supp. 319, 793 A.2d 300 (2001)).

### C. Ogden Adequately Informed Plaintiff About His Representative Capacity

The plaintiff correctly notes that to avoid personal liability, an agent contracting on behalf of a principal has a duty to disclose both the fact that he is acting in a representative capacity and the identity of his principal, since the party with whom he deals is not required to discover or to make inquiries to discover these facts. "[W]here the agent contracts as ostensible principal, regardless of his intention and notwithstanding his lack of personal interest in the consideration, he will be personally liable on the contract as if he were the principal." Robert T. Reynolds Assocs., Inc. v. Asbeck, 23 Conn. App. 247, 251, 580 A.2d 533, 536 (Conn. App. 1990) (internal quotation marks, citations, and emphasis omitted).

However, the plaintiff's assertion that Ogden inadequately disclosed both his status as an agent and the proper identity of the principal is without merit in light of the nature of Ogden's

handwritten signature on the contract. He signed as "East Avenue Capital Mgmnt" on the first ("Client") line, and only signed his own name on the following lines: "By: Keith Ogden" and "Title: COO." See License Agreement at 1, attached to Affidavit of Keith Ogden. Robert T. Reynolds Assocs is therefore distinguishable, as in that case the defendant did not indicate in any way that he was contracting on behalf of another entity, or that an agent corporation even existed, apart from the acronym "AE" (representing the principal) present in the contract and other documents. The Reynolds court even noted that

> [W]here the corporation appears as the primary signer, the almost universally accepted and reasonable rule of construction is that where the signature is that of the corporation, and the name or names of one or more of its officers in their official capacity are appended as subscribing agents ... the corporation will be regarded as the signer and obligor, and the individuals will not be obligated, unless other language or the general tenor of the writing indicates a contrary intent.

23 Conn. App. at 252 (citing Jacobs v. Williams, 85 Conn. 215, 219 82 A. 202 (1912)).

The Court finds that given the circumstances of this case, the role of Ogden's signature on the contract, *i.e.* as the representative of East Avenue, is clear and unambiguous and adequately informed LucidRisk of the identity of East Avenue as the principal on whose behalf Ogden was acting. The missing words "Partners," "Co.," and "LLC" from the actual name of the LLC in question ("East Avenue Capital Partners Management Co., LLC") are *de minimis* and do not create any actual ambiguity as to the existence of a principal-agent relationship with the managing entity for the East Avenue hedge funds. Drawing the inferences necessary to rule in the plaintiff's favor would not be reasonable in light of the appearance of the contract cover sheet and signature. Also, the plaintiff sued the correct LLC in the related state court action, indicating that the plaintiff does not actually suffer from any uncertainty as to the actual party obligated

under the contract.

Moreover, LucidRisk is a sophisticated plaintiff which regularly does business with hedge funds, which are themselves sophisticated businesses. The risk-analysis software at issue is also sophisticated and has a very specific use; LucidRisk must have known that this type of software would be used by a hedge fund managing entity, potentially in the management of several hedge funds. LucidRisk has done this type of business before, and likely knew that hedge funds are usually run through corporate entities rather than as sole practitioners, and often involve one managing entity that exercises control over other hedge fund entities. The contract was a form contract drafted by LucidRisk, and its terms reflect the sophisticated nature of its business. Finally, LucidRisk's managing member, Noah Himmel, submitted an affidavit that nowhere states that when he signed the contract with East Avenue, he understood himself to be doing business with either Ogden or Gerhard individually rather than with their company.

Accordingly, the plaintiff has not met its burden of making a prima facie showing that this Court has personal jurisdiction over either of the defendants under the long-arm statute or as a result of a consent to personal jurisdiction. The Court need not reach the question of whether the exercise of jurisdiction would comport with due process's "minimum contacts" or "reasonableness" requirements, although it notes that it is unlikely that these requirements have been met in this case. The Court also need not reach the CUTPA or breach of good faith claims, although it seems clear, especially in light of the Court's finding that Ogden signed the contract in his representative capacity only, that neither cause of action would survive the motion to dismiss under Rule 12(b)(6) even if personal jurisdiction had been present over the defendants.

## IV.     Conclusion

For the foregoing reasons, the Motion to Dismiss [Dkt. # 8 ] is GRANTED.

So ordered this 19th day of May, 2009 at Hartford, Connecticut.


                                            /s/ Christopher F. Droney
                                   **CHRISTOPHER F. DRONEY**
                                   **UNITED STATES DISTRICT JUDGE**